IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

        v.                :       Cr. No. 12-359

TERRANCE BOLDEN         :

GOVERNMENT'S MEMORANDUM REGARDING RESENTENCING

Defendant Terrance Bolden appears for resentencing, following this Court's ruling under 28 U.S.C. § 2255 invalidating one count of conviction under 18 U.S.C. § 924(c), and determining that Bolden also is not subject to sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e). At this time, the government recommends that the Court reimpose the same total term of imprisonment of 20 years to which the parties previously stipulated.

I.     **Background.**

     A.     **The Offense Conduct.**

Following eight adult criminal convictions for bank robbery, drug, and firearms offenses, among others, the defendant robbed and attempted to rob four separate financial institutions on May 11, 2012 (the day before his 39th birthday) and June 22, 2012.

The first robbery occurred on the morning of May 11, 2012, when Bolden entered the TruMark Financial Credit Union, located at 1931 South Broad Street in Philadelphia. Once inside the bank, he handed a torn piece of paper to the teller and demanded money,

stating, "[g]ive me the money in both your drawers [and] don't make no scene." The bank teller handed Bolden approximately $6,601 and a GPS device. The defendant fanned through the money, found the GPS device, and handed it back to the teller. He then placed the money in a white plastic bag and fled the bank.

Next, on the morning of June 22, 2012, Bolden entered the Wells Fargo Bank located at 2300 Snyder Avenue in Philadelphia. He approached the teller counter and showed the teller a note which read, "I have a gun; give me all your money," and then said aloud, "I'm serious [and] somebody is going to get hurt because of you." The teller backed away from the window, after which the defendant fled the bank.

Thirty minutes later, at approximately 11:43 a.m., the defendant returned to the same TruMark Financial Credit Union branch he robbed a month earlier. He joined the line of customers waiting to speak with a teller. While he waited in line, the assistant branch manager recognized the defendant from a photo of him during the previous robbery of the branch. She approached the defendant and asked if he needed assistance. When he responded affirmatively, she escorted the defendant to her office. Once inside her office, the defendant said, "you can help me. . . put your mother fucking hands on the desk . . . I'm not trying to hurt anybody, just trying to feed my family." He then placed a black revolver on his right thigh and asked the assistant manager for $14,000. She responded that she could not get the money and stated, "I have taken care of what I needed to."

The defendant then fled the bank and ran across the street, to the United Savings Bank at 1945 East Passyunk Avenue. There, he approached the teller counter holding a

revolver in one hand and a piece of paper in the other. The teller attempted to press the silent alarm but accidently hit a button that unlocked the door providing access behind the counter. The button set off an audible buzzing noise which startled the defendant, who immediately fled the bank.

### B.   Criminal History.

Bolden had numerous prior convictions, and had served lengthy terms in state prison.

In 1997, at age 24, Bolden threatened two people with a gun and stole a car. He was convicted of a variety of offenses, including assault. PSR ¶¶ 66-67.

In 2001, at age 27, he was convicted of obstructing justice. PSR ¶ 68.

In 2002, at age 29, he was convicted of possession of crack with intent to deliver. PSR ¶ 69.

In 2003, at age 30, he committed three separate armed bank robberies, for which he was convicted in state court. The longest sentence he received in these cases was 4 to 8 years. He was paroled in June 2009, but then recommitted for nine months beginning in January 2010. His parole ended on February 18, 2012, three months before the instant offenses began. PSR ¶¶ 70-72.

### C.   Procedural History.

In this case, on July 19, 2012, Bolden was charged in a seven-count indictment with bank robbery in violation of 18 U.S.C. § 2113(a) (Count One); attempted bank robbery in violation of 18 U.S.C. § 2113(a) (Count Two); attempted armed bank robbery in violation of 18 U.S.C. § 2113(d) (Counts Three and Five); knowingly using and

carrying a firearm, during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Counts Four and Six); and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Seven).

The parties entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Bolden agreed to plead guilty to Counts One through Five and Seven, while the government agreed to dismiss the 924(c) charge in Count Six (an action that spared Bolden a mandatory consecutive term of imprisonment of 25 years under the law in effect at the time). The parties stipulated that the proper sentence was a term of imprisonment of 20 years, a 5-year period of supervised release, restitution as ordered by the Court, a fine as ordered by the Court, and a $600 special assessment. Bolden entered the plea on March 18, 2015.[1]

On December 17, 2015, the Court accepted the agreement, and imposed a term of imprisonment of 240 months, consisting of 180 months on all counts but the 924(c) charge in Count Four, for which a consecutive term of five years was imposed. The Court also imposed a total term of supervised release of five years, restitution in the amount of

---

[1]  The agreement also included an appellate waiver provision in which Bolden agreed not to appeal or seek collateral review in the future. The government does not invoke that waiver here, however. The agreement stated that Bolden preserved any claim of ineffective assistance of counsel. At this time, his principal challenge is based on the 2015 decision in *Johnson v. United States*, 576 U.S. 591 (2015), that was decided before he was sentenced, and that immediately set off a tidal wave of challenges similar to that presented here. Bolden has a credible claim that his counsel was ineffective in not raising such a challenge. The government therefore did not assert the waiver in response to Bolden's 2255 motion.

$6,601, and a special assessment of $600. Bolden is presently serving the sentence of imprisonment, with a minimum release date of March 19, 2030.

### D.    Guidelines Calculation.

Before imposing sentence, the Court adopted the findings of the presentence report, which were undisputed.

The base offense level for each of the four robberies and attempted robberies was 20, USSG § 2B3.1, increased by 2 under § 2B3.1(b)(1) because a financial institution was targeted. The second incident involved a threat of death, for which a 2-level enhancement was added under § 2B3.1(B)(2)(b). Bolden displayed a gun in the last two of the attempted robberies. For the first of those incidents, he was subject to a 924(c) charge, and therefore did not receive a firearm enhancement under the Guidelines, *see* § 2K2.4 app. note 4. For the second incident, the government dismissed the 924(c) count, and therefore he faced a 6-level enhancement for using a firearm, § 2B3.1(b)(2)(B).

Thus, the offense levels for the four crimes were, respectively, 22, 24, 22, and 28. Under the grouping rules, § 3D1.4, this produced a total offense level of 31.

However, Bolden was a career offender. Under § 4B1.1(c)(3), as a career offender also convicted of a 924(c) charge, who accepted responsibility, Bolden faced a final advisory guideline range of 262 to 327 months. The stipulated sentence of 240 months fell below that range.

### E.    The 2255 Motion.

On July 23, 2024 (ECF 140), this Court granted relief under 28 U.S.C. § 2255. It held that the 924(c) conviction in Count Four is invalid, as it was predicated on attempted

armed bank robbery, which the Court held does not categorically qualify as a "crime of violence" under Section 924(c). The Court further held that Bolden is not subject to sentencing on Count Seven (the felon-in-possession charge) under ACCA, as he does not under current law have a sufficient number of prior convictions that qualify as ACCA predicates. The Court determined that plenary resentencing is warranted.

## II.   Discussion.

This case presents on full display the bizarre results produced by the categorical approach, a doctrine that weighs criminal culpability based not on the defendant's actual conduct, but on the hypothetical conduct of other imagined people. Based on this counter-factual approach, and this Court's 2255 ruling, Bolden is no longer subject to Section 924(c), no longer qualifies for sentencing under ACCA, and no longer stands as a career offender – even though his actual conduct and history manifestly justify application of every one of those provisions. The appropriate remedy for this absurd situation is an upward variance to apply the penalties that Congress and the Sentencing Commission, and common sense, plainly deem appropriate for Bolden's career of crime.

### A.   The Current Sentencing Calculation.

Following this Court's ruling, Bolden faces a guideline range roughly half of his original exposure.

This Court ruled (ECF 140, filed July 23, 2024), that Bolden's conviction under 18 U.S.C. § 924(c) in Count Four is invalid, and that further he is not subject to sentencing under ACCA on Count Seven.

The government respectfully disagrees with these rulings, and reserves the right to appeal.[2] With regard to the 924(c) issue, the Court held that attempted armed bank robbery in violation of 18 U.S.C. § 2113(d) does not categorically qualify as a "crime of violence" under Section 924(c), because force or a threat may be directed against "any person," not only the "person of another" as required by the 924(c) definition (an indisputably absurd scenario, as in, we presume, "hand over the money or I will assault myself").[3]

However, the 2113(d) charge in this case was necessarily predicated on bank robbery in violation of Section 2113(a). This Court stated, inconsistently, that "it is not clear" whether force or a threat must always accompany an attempt in violation of Section 2113(a), ECF 140 at p. 6, then later that attempt in violation of Section 2113(a) "does not require force or intimidation," *id.* at p. 8. In fact, as the government explained in earlier briefing, the use of force or a threat is an element of attempted bank robbery in violation of Section 2113(a), and therefore the 2113(d) offense in this case, that was predicated on a 2113(a) violation, also qualifies.

---

[2]  By extension, the government also preserves an objection to the revised guideline calculations set forth in the supplemental PSR and summarized above, that rely on the elimination of the 924(c) charge, ACCA status, and career offender status.

[3]  In *United States v. Vines*, No. 18-013, this Court reached a different result and denied a 2255 challenge to a 924(c) conviction predicated on attempted armed bank robbery. The Court in that case did not discuss the "any person" argument. The matter is on appeal to the Third Circuit, in No. 23-2843, where the government has briefed all aspects of the issue.

The government also demurs regarding the ACCA ruling of this Court. This Court held that two of Bolden's prior state second-degree robbery convictions, in violation of 18 Pa. Cons. Stat. § 3701(a)(1)(iv), do not qualify as "violent felonies," because the statute – in describing acts that may be reckless and acts that must be intentional – describe multiple means and not separate elements. This result is incongruous, in light of the fact that the Third Circuit has held that materially identical provisions in the first-degree portion of the robbery statute do present divisible elements. *See United States v. Henderson*, 80 F.4th 207 (3d Cir. 2023).

In any event, regardless of the merits of these legal arguments, what is incontrovertible is that these results, as is nearly always the case in the application of the notorious categorical approach, rest on hair-splitting distinctions that have nothing whatsoever to do with the defendant's actual conduct and history. Congress plainly intended for an offender such as Bolden, who repeatedly committed truly violent and drug trafficking crimes, and then armed himself again and accosted others in attempts to commit bank robberies, to face enhanced punishment under ACCA and Section 924(c).

While the legal application of the categorical approach is in dispute, the facts are not. In the episode at issue that produced the 924(c) charge, Bolden accosted an assistant manager of TruMark Financial Credit Union at gunpoint in her office. This was obviously the use of a gun in furtherance of a violent crime. Bolden is off the hook just because, in this Court's interpretation, someone could commit the same crime by threatening himself.

Similarly, there is no question that Bolden previously committed numerous violent crimes, in addition to incurring a drug trafficking conviction. In part, in two separate incidents in 2003, Bolden committed two other violent bank robberies. In one, on October 14, 2003, Bolden and a confederate robbed a Fleet Bank in Drexel Hill. One man handed a teller a note that stated, "Put the money on the table. I have a gun." The other pointed a gun at the same teller's chest, and handed the teller a deposit slip that stated, "I have a gun." The men stole $20,950. PSR ¶ 71. In another robbery, on December 8, 2003, Bolden and a confederate robbed a Sovereign Bank in Collingdale, Pennsylvania, presenting a demand note ("I have a gun") and stealing $24,952. PSR ¶ 70.

Plainly, Bolden previously committed at least three drug trafficking and violent crimes, and then armed himself again to rob more banks. He is precisely the type of person Congress aimed to incapacitate through application of ACCA. But he is off the hook here as well, given the Court's finding that at least two of his prior robbery convictions were based on a portion of the Pennsylvania robbery statute that others may commit recklessly.

That same ruling condemns Bolden's status as a career offender, that previously produced a guideline range of 262 to 327 months. Again, no one can seriously dispute that Bolden is a career violent criminal, who should be subject to a sentence near the statutory maximum for his crimes, as Congress dictated in 28 U.S.C. § 994(h) and the Sentencing Commission implemented in Section 4B1.1. But the categorical approach

intervenes again, preventing his prior robbery offenses from qualifying as "crimes of violence," leaving his drug trafficking conviction as the only qualifying predicate.[4]

Without career offender status, the final offense level is 28. As noted earlier, the offense levels for the four robbery offenses were 22, 24, 22, and 28. With the 924(c) charge related to the third incident removed, there is now a 5-level enhancement for that offense for brandishing a weapon, increasing the offense level for that group to 27. Under the grouping rules in § 3D1.4, there is now a 4-level increase to the highest offense of 28. That total of 32 is then reduced by 3 for acceptance of responsibility, producing an offense level of 29. Bolden's criminal history category, absent career offender status, is V. The advisory range is then 140 to 175 months.

**B.    Upward Variance.**

All of this is just the latest perverse impact of the categorical approach. As stated, Bolden truly is an armed career criminal and a career offender, and he used a gun to

---

[4]  This Court held that at least two of Bolden's three robbery convictions rested on a provision that others may violate recklessly. And as defense counsel pointed out in the 2255 proceedings (ECF 134), the judicial records regarding Bolden's third prior robbery conviction are unclear as to the precise statutory basis, leaving the possibility that it too rested on a provision that others might commit recklessly. Again, even though the facts show that Bolden engaged in intentional violence on every occasion, the categorical approach precludes application of the career offender guideline. Section 4B1.2(a) defines a "crime of violence" based on an elements clause that matches that in ACCA, and on an enumerated clause that includes "robbery." This Court's ACCA ruling thus applies to use of the 4B1.2 elements clause as well. And a robbery that can be committed recklessly also does not qualify under the enumerated clause. That was not previously the case, but in 2023, the Sentencing Commission adopted a definition of "robbery" in § 4B1.2(e)(3) that matches the definition in the Hobbs Act, 18 U.S.C. § 1951(b)(1), a crime that requires proof of intentional, not reckless, conduct, leaving some of the Pennsylvania provisions overbroad in comparison.

commit a violent crime. He is exactly the type of offender Congress targeted in its direction to the Sentencing Commission to write the career offender provision. *See* 28 U.S.C. § 994(h). And he is also exactly the type of person for whom Section 924(c) was drafted, to assure additional punishment for one who uses a firearm during a violent crime, and to whom ACCA should apply, where the defendant armed himself again after committing numerous previous drug and violent crimes.

Applying the provisions that directly address Bolden's conduct, the results are clear: He should receive the sentence to which the parties originally stipulated, of 20 years, consisting of a 15-year ACCA term and 5-year 924(c) term. This should be accomplished through an upward variance.

The categorical approach often produces results divorced from reality, based on nothing more than imagination of a hypothetical person, not the offender before the Court. In the 2022 decision in *Taylor*, for instance, the Supreme Court concluded that attempted Hobbs Act robbery does not categorically qualify as a "crime of violence" under 18 U.S.C. § 924(c), because one may imagine an attempt offense in which the defendant did not actually use or threaten force. The Court set forth a hypothetical, in which a person named "Adam" planned to rob a business, researched its security measures and business practices, drafted a demand note, and bought supplies and planned his escape, all to be arrested as he crossed the threshold into the store. *Taylor*, 596 U.S. at 851-52. Based on the possibility of such a prosecution for attempted Hobbs Act robbery, that did not reach a moment at which actual force was applied or threatened, the Court held that no such offense qualifies as a "crime of violence" – even though in the *Taylor*

case itself, the defendant, during an aborted robbery, actually killed the victim. *See also Wallace v. United States*, 43 F.4th 595 (6th Cir. 2022) (necessarily vacating 924(j) conviction based on attempted Hobbs Act robbery, under *Taylor*, even though the attempted robbery left one robber dead and a store employee shot and profoundly injured).

In dissent in *Taylor*, Justice Thomas described this exercise as a "30-year excursion into the absurd," 596 U.S. at 861, observing, "In case after case, our precedents have compelled courts to hold that heinous crimes are not 'crimes of violence' just because someone, somewhere, *might* commit that crime without using force." *Id.* at 867 (emphasis in original). He stated, "It is hard to fathom why this makes sense or why any rational Congress would countenance such an outcome so divorced from reality," *id.* at 863, as "[n]o rational legislature would have implicitly imposed this byzantine and resource-depleting legal doctrine that so encumbers federal courts and threatens public safety," *id.* at 872. Justice Alito added, "I agree with Justice THOMAS that our cases involving § 924(c)(3)(A) have veered off into fantasy land." *Id.* at 874.

It is difficult to fully capture the absurdity at play here, but many judges have made a good faith effort. *See, e.g., United States v. Williams*, 898 F.3d 323, 337 (3d Cir. 2018) (Roth, J., concurring, expressing the "concern that the categorical approach, along with its offspring, the modified categorical approach, is pushing us into a catechism of inquiry that renders these approaches ludicrous."); *United States v. Chapman*, 866 F.3d 129, 136-37 (3d Cir. 2017) (Jordan, J., concurring). In an immigration matter, the Third Circuit Court began its opinion:

We deal today with another appearance of what is known as the "categorical approach" to determining whether and how a conviction under state law will have consequences for the convicted criminal under federal law. We must apply it now in an immigration case, but, in whatever context it surfaces, it's a fair bet that this formalistic framework may result in some counterintuitive and hard-to-justify outcome. And so it does here. . . .

The categorical approach mandates our accedence to Cabeda's demand that we ignore what she actually did and focus instead on what someone else, in a hypothetical world, could have done. That's the analytical box the categorical approach puts us in. Thus, even though it is indisputable on this record – and, in fact, no one does dispute – that Cabeda repeatedly had sex with a minor, when we assess her conviction alongside the pertinent federal statutes, the categorical approach blinds us to the facts and compels us to hold that the crime of which she was convicted does not amount to the aggravated felony of "sexual abuse of a minor." It is a surpassingly strange result but required by controlling law.

*Cabeda v. Attorney Gen. of United States*, 971 F.3d 165, 167 (3d Cir. 2020).[5]

---

[5] Other judicial criticism of this situation is legion. Recently, in a dissenting opinion in *United States v. Scott*, 14 F.4th 190, 200-02 & nn.6-24 (3d Cir. 2021), Judge Phipps provided a lengthy compendium of the unflattering descriptions and pejorative labels justices and judges have assigned to this most perverse of sentencing doctrines. *See also, e.g.*, *United States v. Reyes-Contreras*, 910 F.3d 169, 186 (5th Cir. 2018) (en banc) ("The well-intentioned experiment that launched fifteen years ago has crashed and burned."); *United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019) ("In the nearly three decades since its inception, the categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad."); *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc) (Thapar, J., joined by four judges) ("The time has come to dispose of the long-baffling categorical approach."); *United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (en banc) (Park, J., concurring on behalf of five judges, quoting numerous other judges, and stating: "As a growing number of judges across the country have explained, the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice."); *United States v. Doctor*, 842 F.3d 306, 313-15 (4th Cir. 2016) (Wilkinson, J., concurring) (it "can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," that, "too aggressively applied, eviscerates Congress's attempt to enhance penalties for violent recidivist behavior," creating "a criminal sentencing regime so frankly and explicitly at odds with reality."); *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Graber, J., concurring) ("I write separately to add my voice to the

*continued . . .*

To repeat, Bolden may not be subject to ACCA, the guideline enhancement, and a 924(c) penalty not because there is anything mitigating about his past conduct, or because there is any constitutional wrong in holding him accountable for his violent acts. Rather, he is relieved of application of these provisions just because other people in Pennsylvania might commit the same crimes he did without comparable violence.

There is an obvious correction for this nonsensical situation: an upward variance. In *United States v. Carter*, 961 F.3d 953 (7th Cir. 2020), while finding that a particular offense qualified as a crime of violence under the categorical approach, the court explained at length that courts should consider variances based on a defendant's actual conduct in those cases where application of the categorical approach, which focuses on hypothetical conduct of other people, would produce an odd result. Judge Hamilton wrote in part: "we also remind district courts that the classification of prior convictions under the Sentencing Guidelines can produce abstract disputes that bear little connection to the purposes of sentencing. As the Sentencing Commission itself has recognized since the Sentencing Guidelines were first adopted, district judges may and should use their sound discretion to sentence under 18 U.S.C. § 3553(a) on the basis of reliable information about the defendant's criminal history even where strict categorical classification of a

---

substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach. . . . The categorical approach requires us to perform absurd legal gymnastics, and it produces absurd results. . . . It is past time for someone with the power to fix this mess to do so."); *Williams v. Barr*, 960 F.3d 68, 80 (2d Cir. 2020) (concurring in a ruling that a Connecticut firearms statute was categorically overbroad in relation to an immigration provision, despite the fact that the defendant possessed an ordinary firearm, Judge Jacobs stated: "The result in the Court's opinion is compelled, not endorsed. I would not try to justify it to any sensible person.").

prior conviction might produce a different guideline sentencing range." *Id.* at 954. In a dissenting opinion in an immigration case, Justice Breyer, while explaining the categorical approach at length, made the same point: "in the ACCA context, a sentencing judge, even where ACCA is inapplicable, has some discretion in determining the length of a sentence. If he finds that the present defendant in fact burgled, say, a dwelling and not a boat, he can take that into account even if the sentencing enhancement does not apply." *Pereida v. Wilkinson*, 592 U.S. 224, 250 (2021). *See also United States v. Graham*, 67 F.4th 218, 226-29 (4th Cir. 2023) (Wilkinson, J., concurring) (presenting a lengthy statement encouraging district courts to consider actual facts both in setting guideline ranges and then granting upward departures or variances as necessary to correct the impact of application of the categorical approach, as "[t]here are limits to the miles that sentencing practice can travel beyond common sense.").

Thus, in *United States v. Fuentes-Canales*, 902 F.3d 468 (5th Cir. 2018), the court held that Texas burglary of a habitation, in violation of Tex. Penal Code § 30.02(a) and (d), is broader than and does not qualify as burglary of a dwelling under the former § 2L1.2. But the court affirmed the sentence on the basis of the fourth prong of plain error review, given that the jury in the previous case actually found generic burglary or aggravated assault, and the undisputed facts in the PSR also demonstrated that the crime was violent. The court added: "While courts cannot consider the factual means by which a defendant committed a prior offense for purposes of arriving upon the correct Guidelines sentencing range, the defendant's actual commission of a 'crime of violence' or other evidence regarding the defendant—if sufficiently supported by the record—may

be considered in imposing a sentence well outside the advisory Guidelines range." *Id.* at

477. *See also United States v. Gardner,* 939 F.3d 887, 891 (7th Cir. 2019) (the district

court did not err, after accurately calculating the guideline range, in varying upward to

the range that would have applied when burglary was deemed a crime of violence under

the Guidelines, given the violent nature of the defendant's prior burglary). *See also*

*United States v. Mills*, 917 F.3d 324 (4th Cir. 2019) (the court need not resolve whether a

particular offense qualified as a crime of violence where the sentencing court stated that it

would impose the same sentence regardless of the guideline range, and that was

reasonable); *United States v. Door*, 996 F.3d 606, 622-23 (9th Cir. 2021) (after sentences

were vacated based on application of the categorical approach to prior convictions, the

district court reimposed the same 276-month sentence, as a variance from the current

range of 140-175 months; the sentence is affirmed as substantively reasonable).

This approach has been applied in other cases in this Circuit. For instance, in *United*

*States v. Dahl*, 713 F. App'x 62 (3d Cir. 2017) (not precedential), the defendant was

convicted of use of interstate commerce to engage minors in sexual activity. The district

court applied the enhancement for a recidivist sexual offender under USSG § 4B1.5,

based on the defendant's lengthy list of prior crimes, and imposed a sentence at the top of

the resulting guideline range of 235 to 293 months. The Court of Appeals then held that

Section 4B1.5 did not apply, because, under the categorical approach, a prior Delaware

conviction for first- and third-degree unlawful sexual contact was based on a statute that

swept too broadly to categorically qualify as sex offenses under Section 4B1.5. *United*

*States v. Dahl,* 833 F.3d 345 (3d Cir. 2016). This dropped the guideline range to 121 to

151 months. On remand, the government argued for reimposition of the same 293-month

sentence, as an upward variance, given the fact that the defendant had actually committed

numerous sex offenses against children, regardless of the outcome under the categorical

approach. Judge Bartle agreed, and reimposed the same sentence. The Third Circuit

affirmed. The Court of Appeals stated, in part:

> The difference between steps is crucial. While the categorical approach is required
> by the mechanical Guidelines calculation found at step 1, we have never held that
> the categorical approach's constraints apply to step 3—or, by extension, that the
> facts deemed improper at step 1 may not be considered at step 3. . . .
>
> Even if the District Court had explicitly referred to the erroneous Guidelines range
> in resentencing, Dahl's argument rests on the faulty assumption that an
> inapplicable Guidelines range cannot guide the District Court in its discharge of its
> sentencing responsibilities. In fashioning an appropriate sentence, the District
> Court may reasonably look to Guidelines more broadly as providing guidance and
> alternatives.

713 F. App'x at 66-67.

In another example, in *United States v. Wiltshire*, 736 F. App'x 322 (3d Cir. 2018)

(not precedential), Wiltshire was initially sentenced under the Armed Career Criminal

Act, on the basis of three predicate convictions: two New York convictions for attempted

robbery, and a Pennsylvania conviction for selling heroin. The guideline range was 262-

327 months, and the court imposed a sentence (later affirmed by the Third Circuit) of 276

months. More recently, the defendant filed a 2255 motion, and the parties agreed that

ACCA status no longer applied, based on application of the categorical approach and the

drafting of the New York robbery statute. Without ACCA status, the sentencing range

was now 110-137 months. Judge Pratter varied upward and imposed a term of 180

months.

On appeal, Wiltshire asserted that the sentence was substantively unreasonable. The Third Circuit disagreed, stating, "But as the Government points out, the District Court was under no obligation to mechanistically vary its sentence along with the Guidelines range, and the 'disparity [between the two sentencing ranges] result[ed] from' a change in the law 'entirely divorced from Wiltshire's actual conduct and background.' . . . Nor was it unreasonable for the District Court to conclude that without the ACCA enhancement, the Guidelines range no longer adequately reflected the seriousness of Wiltshire's prior participation in two violent robberies, including one where he hit the victim in the head with a bat. For those reasons, the Court did not abuse its discretion when it varied upward." *Id.* at 325.

Similarly, in *United States v. Moon*, 757 F. App'x 134 (3d Cir. 2018) (not precedential), the Court approved a similar variance. There, career offender status, which had produced a range of 210-240 months at the original sentencing, was voided due to application of the categorical approach to state robbery offenses, producing a new range of 77-96 months. Judge Baylson then imposed a sentence of 216 months, based on an upward variance in light of the defendant's actual violent record, and the Third Circuit affirmed.[6]

---

[6] Of course, pursuant to *Booker*, the Guidelines are advisory, and this Court may impose any reasonable sentence within the statutory maximum for the counts of conviction. In part, the Court may impose a sentence outside the advisory guideline range if it disagrees with the guideline range on legal or factual grounds. *Kimbrough v. United States*, 552 U.S. 85 (2007) (allowing a variance where the court disagreed with the disparate treatment in the law of crack and powder cocaine offenses). The result produced here by the categorical approach calls out for such disagreement.

The defendant here should be treated the same. He committed multiple, heinous crimes that warrants application of the full, appropriate sentence under the law. That means he should face a 924(c) term, application of ACCA, and a career offender range of 262 to 327 months. Accordingly, the parties' earlier agreement, accepted by the Court, of a modestly lower term of 240 months should be applied again. That is the most appropriate result to address Borden's repeated lawlessness and protect the public from his propensity for violence. There is no reason to change that result now.[7]

This conclusion is reinforced by a review of Bolden's record in prison. As the revised PSR states, he has committed 14 disciplinary infractions during his time in custody, including serious offenses such as threatening bodily harm to staff, assaulting another inmate, stealing, and possessing drugs or alcohol on multiple occasions. Notably, his most recent serious infraction was on April 17, 2024, while the instant 2255 matter was pending, when Bolden was found in possession of a five-inch sharpened weapon. Supp. PSR ¶ 23. This dismaying record underscores the need to maintain the original sentence in order to protect the public. We also note that Bolden has engaged in very minimal programming while in prison. *See* Supp. PSR ¶ 82 (reflecting a total of 98 hours during over 12 years of imprisonment).

---

[7] The sentence may be restructured on the counts of conviction, respecting that without ACCA the maximum term on Count Seven is reduced to 10 years. The judgment in all other respects should not be changed.

For all of these reasons, the government advocates reimposition of the original 240-month sentence.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified

below through the Electronic Case Filing (ECF) system:

Abigail E. Horn, Esq.
Assistant Federal Defender

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney

Dated:  October 2, 2024.